FILED

Brandon Anthony Parrott & Erica Tucker
6818 W Sunset Blvd #3
Los Angeles CA 90069
(818)299-7498

2016 JUN 15 PM 2: 33

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF
LOS ANGELES

BY: _____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CV16-4287-SJO (GJSx)

| | |
|---|---|
| Brandon Anthony Parrott, Erica Tucker | ) Case No.: |
| | ) |
| Plaintiff, | ) COMPLAINT FOR: |
| | ) 1. Violation of 17 U.S.C. §101 et |
| vs. | ) seq. (Copyright Infringement); |
| | ) 2. Unjust Enrichment; |
| Denaun Porter, Universal Music Group, Interscope | ) 3. Demand for Accounting; |
| | ) 4. Constructive Trust; |
| Records, Aftermath Entertainment, Vivendi Universal, | ) 5. Permanent Injunction; |
| | ) 6. Fraud |
| EMI Music Publishing, 50 cent music publishing, | ) |
| | **Jury Demand** |
| Curtis Jackson, Zach Katz, | |
| | |
| , | |
| | |
| Defendant | |

---

COMPLAINT

Plaintiff Brandon Parrott hereby complains and alleges as follows:

JURISDICTION AND VENUE

1. This is a civil action arising under the United States Copyright Act, inter alia. This court has federal question

jurisdiction over this action pursuant to 15 USC 1121, 17 USC 501, 28 USC 1331 and 28 USC. 1338 (a) as well as

pendant jurisdiction over all state claims.

2. Exercise of specific personal jurisdiction over Defendants is consistent with the principles of due process as

enumerated in the California and US Constitutions, as Defendants have minimum contacts with California such that

maintenance of this suit does not offend traditional notions of Fair Play and substantial justice. Upon information

and belief: (1) Defendants operate at least one business through which they have specifically targeted Californians;

Parrot & Tucker v. Porter, et. al.                                    1/17

(2) Defendants have intentionally infringed Brandon Parrott's registered copyrights, which acts are expressly aimed at Brandon Parrott's business activities in California, and have harmed Brandon Parrott, the brunt of which it has suffered, and which Defendants know is likely to be suffered, in California; and (3) Brandon Parrott's claims arise out of or result from the defendants activities in California.

3. Venue is proper in this district pursuant to 28 USC Section 1391 (b) and 28 USC 1400 (a).

<u>Introduction</u>

4. This complaint is brought to redress Defendants' (hereinafter "Defendant" or "Defendants" collectively) willful fraud and willful violation of Plaintiff Brandon Parrott's ("Parrott") interest in the copyrighted musical composition and Sound Recording "BAMBA"(referred to hereafter as "the track"). With full knowledge of Brandon Parrott's copyright in the track, and without Brandon Parrott's permission, Defendants blatantly copied a unique and extremely significant portion of the Track and included it in a high profile and widely distributed single on various high profile albums, thereby infringing on the copyrights created by Parrott. Additionally, on information and belief, several additional copyrights created and owned wholly by Parrott were fraudulently converted to property of Defendants and its subsidiaries. Plaintiff, at this date, is unable to identify the full measure of all potential additional claims of copyright infringement as defendants continue to avoid full disclosure of the contents of the agreements between various defendants exclusively in their possession, which, on information and belief, infringe upon Brandon Parrott's exclusive interest in various musical compositions and sound recordings including, but not limited to the track. Accordingly, Plaintiff reserves the right to modify this complaint to include additional infringed works that may be identified through the discovery process. Brandon Parrott requests statutory and/or actual damages, punitive damages and an injunction, along with monetary and injunctive remedies for the Defendants' unauthorized exploitation of the Track, fraud and their unjust enrichment therefrom, pursuant to US copyright act 17 USC 101 et. Seq. and all other applicable statutes.

<u>The Parties</u>

5. Plaintiff Brandon Parrott is an individual with a principal place of residence in Los Angeles CA. Brandon Parrott

1  is a music composer and Producer in Los Angeles CA.

2  6.Plaintiff Erica Tucker is an individual with a principal place of residence in Los Angeles CA. Erica Tucker is a

3  business manager and music publishing administrator in Los Angeles CA. Erica Tucker is the exclusive

4  administrator of the original compositions and sound recordings.

5  7.Defendant Denaun Porter, an individual, is a music producer with substantial ties to Los Angeles CA. Upon

6  information and belief, Denaun Porter regularly conducts business in Los Angeles CA, and claims ownership in, and

7  shares in the revenue stream from the infringing songs now known and unknown (hereinafter the "Infringing songs"

8  collectively and also referred to as the "Infringing Albums" (hereinafter the "Infringing Albums").

9  8.Defendant Universal Music Group INC.(UMG) is a corporation organized and existing under the Laws of the

10  State of California. Parrott and Tucker are informed and believes that UMG is manufacturing the Infringing Songs

11  and the Infringing Albums and participating in the revenue stream of the Infringing Songs and the Infringing

12  Albums. Additionally, Tucker and Parrott are informed and believe that UMG claims an ownership interest in the

13  Sound Recordings of the Infringing Songs and the Infringing Albums.

14  9.Defendant Interscope Records ("Interscope") is a corporation organized and existing under the laws of the State of

15  Delaware, which is registered as a foreign entity in California and upon information and belief, regularly conducts

16  business in Los Angeles. Interscope is a record label, which Parrott and Tucker are informed and believes, is

17  responsible for exploiting the Infringing Songs and the Infringing Albums.

18  10.Defendant Aftermath Records ("Aftermath") is an unknown Designation.

19  11.Defendant Shady Records ("Shady") is an unknown designation. On information and belief Shady is an imprint

20  of Marshall "Eminem" Mathers.

21  12. Defendant EMI Music Publishing ("EMI") on information and belief is a Delaware company.

22  13. Defendant 50 Cent Music Publishing ("50 Cent Music") is a New York

23  14. Defendant Vivendi Universal ('Vivendi") is a foreign entity registered in Delaware. On information and Belief

24  Vivendi owns UMG and its subsidiaries.

25  15. Defendant Curtis Jackson is a Defendant Denaun Porter, an individual, is a recording artist with substantial ties

26  to Los Angeles CA. Upon information and belief, Curtis Jackson regularly conducts business in Los Angeles CA,

27  and claims ownership in, and shares in the revenue stream from the infringing songs now known and unknown

28  (hereinafter the "Infringing songs" collectively) and the "Infringing Albums" (hereinafter the "Infringing Albums").

16. Defendant Zach Katz, an individual, is a music attorney and high level music executive in Los Angeles CA. Upon information and belief, Zach Katz regularly conducts business in Los Angeles CA, and shares or shared in the revenue stream from the infringing songs now known and unknown (hereinafter the "Infringing songs" collectively) and the "Infringing Albums" (hereinafter the "Infringing Albums").

17. Plaintiffs expressly reserves the right to name such additional parties, as yet unknown, that may become known to them throughout the discovery process.

### STATEMENT OF FACTS

17. On or about July 2001 Brandon Parrott solely created several musical compositions and sound recordings hereinafter the ("Tracks") and registered those original works of authorship with the United States Copyright Office. The collection of tracks received registration number SRu 000496482, and is attached hereto as "Exhibit A".

18. On or about August 5,2001, Brandon Parrott personally created and fixated a 10 track Compact Disc of which 8 tracks were solely created by Parrott, and 2 tracks were jointly created by Brandon Parrott and Defendant Denaun Porter. At the time Parrott created the 10 track compact disc, Defendant Porter was on tour with the band "D12" promoting the band's newly released album Devils Night

19. On or about August 10,2001, the Compact Disc containing the tracks at issue was sent to Dr. Dre at Aftermath Entertainment to be considered for possible placement with various Aftermath artists.

20. Because of his role as a member of the rap group D12; a group signed to the Shady/Aftermath record label, which on information and belief is a joint venture between Andre 'Dr Dre" Young and fellow "D12" member Marshall "Eminem" Mathers, Denaun Porter had a superior position to Brandon Parrott and a direct relationship with the Aftermath label that would subsequently release the "tracks". Defendant Porter had the ability to obtain information easily in regards to the potential use of the tracks by Aftermath, and he did obtain that information without disclosing this development to Brandon Parrott when it became known to him..

21. In or about February 2003, Defendant Porter told Brandon Parrott that the track BAMBA, created wholly by Parrott, was included in the infringing song "P.I.M.P." which was released to great critical acclaim and commercial success on or about February 7, 2001). Defendant Porter falsely asserted to Parrott that he was unaware that the track belonging to Parrott was being used, or was even being considered for placement on Curtis "50-Cent" Jackson's album, prior to its inclusion in the album "Get Rich or Die Tryin".

22. Defendant Porter falsely stated to Brandon Parrot that although Aftermath had already manufactured millions of copies of the infringing album and failed to credit Parrott as Producer and Composer or obtain his permission, this was done by mistake. Mr. Porter categorically denied any advance knowledge that the "tracks" were to be used on the album, and claimed to not know or understand why his name was the only name credited as a producer.

23 Porter attributed this mistake to his relationship as an in house producer for Dr. Dre and Aftermath, and he represented to Parrott to have gained said producer deal on his own merits, when in fact he obtained the lucrative position with the Aftermath label solely as a result of falsely and fraudulently taking credit for Brandon Parrot's compositions. Parrott had no knowledge of and received no share of the 15,000 per track Porter received for Parrott's tracks.

24 On or about February 7, 2003 Curtis "50 Cent" Jackson, through his labels SHADY, AFTERMATH, and INTERSCOPE, released the infringing album "Get Rich or Die Tryin" featuring, inter alia, one of the infringing tracks entitled "PIMP". The infringing album had enormous critical and commercial success, selling over 800,000 copies in its first week, and more than 8 million copies to date domestically with over 17 million copies sold worldwide to date.

25. On or about March 6, 2003, Brandon Parrott executed a "Settlement and Mutual Release Agreement" with Denaun Porter and "Co Producer agreement" with Mr. Porter Productions INC. under false and fraudulent pretenses. ( A copy of which is attached hereto as "Exhibit B & C") Parrott executed the agreements drafted by attorney Zach Katz in the Good Faith belief that the defendants released the infringing album containing the tracks without crediting or compensating plaintiff Parrott entirely by mistake, without any advance knowledge of his authorship, and at no fault of Defendants, specifically Defendant Porter; when, in fact, it has become clear that

1   Defendants were well aware that Defendant Porter was not the sole author of these tracks and intentionally released

2   the tracks without providing credit or proper compensation to Brandon Parrott.

3   26. On or about August 2003 Parrott executed a mechanical license for several release versions of "PIMP" on the

4   album "GET RICH OR DIE TRYIN". On Information and belief, all mechanical licenses executed by Parrott were

5   for the full statutory rate as set forth by federal law by the United States Copyright Office.

6   27. On or about March 6, 2013, Plaintiffs consulted  a Certified Public Accountant to audit the publishing and

7   producer statements sent to Plaintiffs from Universal Media Group ("UMG") in standard course to ensure that

8   Parrott was being accounted correctly.

9   28. The Certified Public Accountant indicated that the rates on the publishing statements and producer statements

10  were extremely inconsistent, and a cursory search by the CPA revealed several issues with the amount of free goods,

11  total units accounted, rates paid per unit and various other areas of concern.

12

13  29. Plaintiff, at the CPA's direction, requested a copy of all agreements and licenses which UMG believed to justify

14  the rate at which Parrott was being paid. A diligent search of Plaintiff's own records revealed only one Mechanical

15  License with UMG for one version of the infringing song ISRC #10312556 (Attached hereto as "Exhibit D")

16

17  30. Plaintiffs requested to audit UMG's  books in reference to both the producer account and the publisher account

18  for the infringing song and infringing album on or about March, 2013.

19

20  31. UMG representative Ping Hu flatly denied Plaintiffs request to audit the Producer royalty account in whole and

21  instructed Plaintiff to pursue Denaun Porter and Mr. Porter Productions INC. In order to audit the producer account.

22

23  32. On or about October 2013, UMG representative Ping Hu informed Plaintiffs that they would only allow plaintiffs

24  to audit publisher account and only for the period going 4 years back and not to inception as Plaintiff requested.

25

26  33. On or about March 8, 2014 UMG representative Steve Weil sent Plaintiffs an email containing 3 heavily redacted

27  agreements which UMG purported to Justify the half penny rate that Parrott was being paid including: (1) one

28  certain "Co Producer Agreement" between Parrott and Porter, (2) a "Producer agreement" between Mr Porter

6/17

Parrot & Tucker v. Porter, et. al.

1   Productions INC. c/o Zach Katz and Aftermath Entertainment, and (3) a recording agreement between Curtis "50

2   Cent" Jackson c/o Cutler & Sedlamyr and Shady Records/ Aftermath Records.

3

4   34. Plaintiff was unable to properly interpret the agreements because of UMG's heavy redactions and refusal to send

5   the agreements in full, despite the direct request that full copies of the agreements be sent on or about June 21, 2014.

6

7   35. On or about May to October 2014, Plaintiffs made several attempts to secure a letter of direction from Defendant

8   Porter in order to receive a full, unredacted copy of the above mentioned agreements and to further instruct UMG

9   that Parrott had the right to audit the Producer Royalty account.

10

11   36. On or about June 10,2014 Plaintiff sent UMG a copy of the mechanical license for ISRC:10312556 (A copy of

12   which is attached as "exhibit D") between UMG and Plaintiff which was the only license plaintiff had in his

13   possession. Plaintiff sent a full list of every UPC code and ISRC code for each release of the infringing song and

14   albums which Plaintiff believed should have been in possession of UMG and asked UMG to provide a copy of the

15   license on file for each release code listed. (A copy of which is attached as "Exhibit E").

16

17   37. UMG representative Ping HU sent Plaintiff the same compilation of agreements previously sent to Plaintiffs by

18   UMG representative Steve Weil, as well as two purported mechanical licenses which UMG falsely and fraudulently

19   alleges Plaintiff executed. ( "Exhibit F")

20

21   38. Astonishingly,On or about June 10, 2014 UMG representative Ping HU also indicated that a copy of several of

22   the licenses for ISRC codes on Plaintiffs list could not be located in UMG's system at all. (Please see a copy of the

23   email attached as "exhibit G")

24

25   39. Plaintiff, in or about June 25, 2014 contested the validity of the two false and fraudulent licenses via email sent to

26   Ping Hu and demanded all of the agreements compiled and sent by Ping Hu as justification of UMG's fraudulent and

27   deceptive rate reduction be sent to Plaintiff in their entirety.

28

40. Based on the defendant parties repeated consolidated efforts to prevent Plaintiff from receiving full disclosure, Plaintiff became understandably suspicious of the defendants' intent and actions with respect to the tracks.

41. On or about November 17, 2014, Defendants UMG/INTERSCOPE/SHADY/AFTERMATH incredulously released the Infringing album "Shady XV" which included the infringing song PIMP without Parrott's knowledge and consent, and without properly crediting PARROTT as producer of the infringing song or licensing the use despite their full knowledge that Brandon Parrott created the track.

42. The Infringing Album Shady XV was certified Gold in 2015 and has sold over 1 million copies worldwide to date.

43. In or about May 2015 Plaintiffs discovered a March 2011 written interview feature on Defendant Denaun Porter with reputable media outlet Complex Magazine entitled "Mr. Porter Tells All: The Stories Behind His Classic Records" hereinafter the ("interview"), (the full text of which is attached as "exhibit H").

44. In the interview, Porter gives a detailed account of how he began the inception of his relationship with Dr. Dre specifically as a music producer.

45. Defendant Porter describes with great particularity a 2001 agreement between himself and AFTERMATH/Dr Dre in which he identified the infringing song PIMP and several other songs created and owned in whole by Parrott as being subject to. (Page 14 of the interview in the sub section titled "Xzibit Multiply").

46. In the article Porter also reaffirms his 2003 representation to Parrott that he was unaware of the use of the track owned by Parrott in the infringing song. (Page 24 of interview).

47. Porter states in the article in reference to his 2003 representations to Parrott "I called Brandon, and I was like, 'We sold this joint, I didn't know they were using it, let's take care of the business.' Dude co-produced the record, and I wanted to make sure he got the credit. But sometimes systems move differently, and by

1  the time they sent it out, it didn't have his name on it. He was credited publishing wise though, I tried to

2  handle the business perfectly. He was cool, he understood, and was excited we sold it and wanted to keep

3  working. "Then the [label] manager stepped in and said, 'We want this, and this.' This guy totally

4  destroyed our relationship. And that was the first time I experienced how a major label can cause friction

5  between you and your own people when you're not trying to do something heinous." (page 24 to 25 of

6  interview)

7

8  48.Porter and attorney Zach Katz knowingly and willfully concealed the 2001 deal with Aftermath in which Porter

9  fraudulently sold the tracks belonging to Parrott for 15,000 per track to Aftermath. Rendering Defendant Porter's

10  statements about his unawareness that the track had been purchased for use on an upcoming release entirely false.

11  (page 14 of the interview).

12

13  49.On information and belief, Porter was in fact very aware of the use of the tracks as early as 2001, when he falsely

14  and fraudulently represented that several tracks created and owned either jointly or entirely by Parrott were his own,

15  and then Defendant Porter with the assistance of counsel proceeded to fraudulently sell those tracks to Aftermath.

16  Porter and Katz blatantly made false statements to Parrott in 2003 that they were unaware the tracks had been

17  acquired, with the full knowledge that their statements were false, and specifically calculated to unjustly enrich

18  themselves by inducing Brandon into a contract that concealed the lucrative production deal with Aftermath that

19  Defendant Porter obtained through his use of Brandon's tracks. If Defendant's had disclosed the truth – that they

20  knowingly and willfully sold Brandon's tracks without his permission – Brandon would never have entered the co-

21  production agreement he executed with Defendant Porter.

22

23  50. On information and belief, and by his own representations and admissions in the interview, (page 14 of

24  interview) Porter received his role as In House Producer for AFTERMATH from the delivery of Parrott's tracks,

25  specifically the 10 track CD which, according to Porter's own representations in the interview, (page 14 of

26  interview) Aftermath purchased 7 of the 10 tracks in 2001.

27

28

Parrot & Tucker v. Porter, et. al.

51. On or about April 9, 2016, Plaintiff discovered that the principal in the co-producer agreement he was fraudulently induced into signing, Mr. Porter Productions INC. (the contracting party to the Co Producer agreement with Parrott) does not, and has not ever lawfully existed in the State of Michigan, or any other state in the United States of America.

52. On information and belief, attorney Zach Katz enriched by and was a party to the intentional fraud against Mr. Parrott by Defendant Porter, and the resulting contract that was established with the unlawful fictitious entity, Mr Porter Productions INC.

53. On May 9, 2016, Plaintiffs sent Defendants a certified letter, putting them on notice of Plaintiff's claims, and the unlawful existence of Mr Porter Productions INC. – which rendered the agreement with Mr. Porter Productions unenforceable against Parrott as a matter of law. (attach letter as Exhibit H)

54. The discovery of Fraud was delayed by the Defendant's willful actions and intentional concealment of material facts, which, if known to Mr. Porter, would have substantially modified his engagement with the Defendants.

55. At this time, Defendants continue to engage in infringing activities.

## FIRST CAUSE OF ACTION

Copyright Infringement in violation of 17 U.S.C. 101 et. Seq.

(Against all Defendants)

56. Plaintiffs realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 55, of this Complaint.

57. Plaintiff is the exclusive owner of the U.S. Copyright in all right, title and interest in the musical composition and the sound recording BAMBA which is included in the infringing song PIMP, and the sole party empowered to prosecute actions and claims relating to the track. The musical compositions and sound recordings are properly registered with the United States Copyright Office.

Parrot & Tucker v. Porter, et. al.

58. Defendants intentionally and knowingly infringed the copyright in the Track by reproducing, adapting, copying, publicly distributing, publicly displaying, publicly performing and otherwise exploiting distinct, important and recognizable portions of the work without PARROTT'S consent.

59. PARROTT does not authorize any of the Defendant's agents to utilize, reproduce, adapt, copy, create derivative works, distribute, display, and otherwise exploit any portion of its work, including the musical composition and sound recording and incorporate them into the infringing song.

60. As A direct result of Defendants' willful acts of copyright infringement as described herein, Plaintiffs have suffered substantial damage, in an amount to be proven at trial.

61. Since Defendants' acts also caused Plaintiffs irreparable, ongoing injury of a nature that cannot be adequately compensated or measured in damages, Plaintiffs have no adequate remedy at law and will suffer immediate and irreparable loss, damage and injury unless Defendants are restrained and enjoined from continuing to engage in such wrongful conduct.

<div align="center">

SECOND CAUSE OF ACTION

Unjust Enrichment

(Against all Defendants)

</div>

62. Plaintiffs reallege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 61, of this Complaint.

63. By reason of the foregoing facts, Defendants, and each of them, have become unjustly enriched at the expense of Plaintiffs by failing to license every version of the track at the statutory rate and by realizing monetary gain from unauthorized use of Plaintiffs tracks.

Parrot & Tucker v. Porter, et. al.                                    11/17

64. Defendants, and each of them, have been unjustly enriched in an amount which cannot be precisely ascertained at this time, but will be ascertained according to proof at trial.

## THIRD CAUSE OF ACTION

### Demand for Accounting

#### (Against all Defendants)

65. Plaintiffs reallege and incorporates by reference each and every allegation set forth in Paragraphs 1 through 64, of this Complaint.

66. Plaintiffs are informed and believes that Defendants have generated an undetermined, yet substantial amount of money upwards of 100 million dollars, due to the commercial success of the Infringing Song and the Infringing Albums through sales, distribution, promotion, circulation, and other exploitation of Plaintiffs original musical composition and sound recording of the track in the Infringing Song and on the Infringing Albums, and as contained on other compilations and fixations.

67. As a result of Defendants' actions, or lack thereof, Plaintiffs have been damaged in an amount to be proven after an accounting has been conducted. Accordingly, Plaintiffs hereby request that the court order an accounting of all of Defendants' financial records related to the Infringing Song and the Infringing Albums in order to determine the sums rightfully due to Plaintiff. Furthermore, Plaintiffs demand that those sums be paid to them.

## FOURTH CAUSE OF ACTION

### Constructive Trust

#### (Against All Defendants)

68. Plaintiff realleges and incorporates by reference each and every allegation set forth in Paragraph 1 through 67 of this Complaint.

Parrot & Tucker v. Porter, et. al.

69. Plaintiff is informed and believes Defendants have generated an undetermined, yet substantial amount of money due to the commercial success of The Infringing Song and the Infringing Albums through sales, distribution, promotion, circulation, administration and other exploitation of the Infringing Song and the Infringing Albums.

70. As seen above, Plaintiffs are entitled to all of the money that is generated from the nonconsensual exploitation of their tracks in that they are entitled to receive all profits and a licensing fee for all uses. Plaintiff does not consent to the Defendants Utilization of their original musical composition and sound recording which was joined with the performance of Curtis Jackson to create the Infringing Song PIMP; therefore, Plaintiff has not been paid licensing fees for all uses conferring such privilege on the Defendants.

71. By failing to provide Plaintiff with the licensing fee required to create and exploit various versions of the Infringing Song, Defendants have violated Plaintiff's rights and have been unjustly enriched in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### Permanent Injunction

### (Against all Defendants)

72. Plaintiffs reallege and incorporate by reference each and every allegation set forth in Paragraph 1 through 71 of this Complaint.

73. In or about February 2003 and November 2014 continuing until present, Defendants, and each of them, have promoted, advertised, administered, performed, sold and otherwise exploited the Infringing Song and the Infringing Album, or caused the Infringing Song and Infringing Album to be promoted, advertised, administered, performed, sold and otherwise exploited, without Plaintiff's consent and without payment.

74. These actions by and on behalf of Defendants are wrongful and should be enjoined in that they have caused, and continue to cause, Plaintiff great and irreparable injury.

75. Plaintiff has no other plain, speedy or adequate remedy at law, and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs interests.

<div align="center">

SIXTH CAUSE OF ACTION

FRAUD

(Against all defendants)

</div>

76. Plaintiff realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 75 of this complaint.

77. Defendants knowingly and willfully defrauded Plaintiff and made multiple material misrepresentations which they knew at the time they were made to be false in order to induce plaintiff into a series of agreements. Defendants went above and beyond to conceal their guilt in bad faith.

78. As a direct result of Defendants willful acts of copyright infringement as described herein, Plaintiff has suffered irreparable injury as a result of Defendants fraud.

<div align="center">

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Brandon Parrott & Erica Tucker prays

for judgment against Defendants, and each of them, as follows:

ON THE FIRST CAUSE OF ACTION

</div>

1. That the Court adjudge and decree that the Defendants have willfully infringed Brandon Parrott's exclusive rights under copyright law;

2. That the Defendants, and those acting in concert with them, be permanently enjoined from engaging in further acts of copying the Track;

3. That Defendants, and those acting in concert with them, be permanently enjoined from exploiting any products substantially similar to the Track;

4. An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the Defendants' profits at an amount to be proven at trial, or in the alternative, statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each act of infringement;

5. That Defendants disgorge all profits derived from their wrongful conduct;

6. Interest at the maximum legal rate;

7. All reasonable attorney's fees and costs incurred herein;

8. That the Court grants such other, further, and different relief as the Court deems just and proper under the circumstances.

## ON THE SECOND CAUSE OF ACTION

1. That be awarded the monies gained by Defendants at Plaintiff's expense through the unauthorized use of the Track.

2. That the Defendants, and those acting in concert with them, be permanently enjoined from engaging in further acts of infringement by making, promoting, distributing, administering, performing, selling or otherwise exploiting the Infringing Song and the Infringing Album in their current state, until Plaintiff has received proper credit and consideration for the use of the Track from which the Infringing Song was copied.

3. Interest at the maximum legal rate from the date the Infringing Song was released to the public.

4. All reasonable attorney's fees and costs incurred herein;

5. That Defendants be ordered to account for and recall from distribution channels any and all copies of the Infringing Song and the Infringing Album so as to permanently remove them from the stream of commerce; and

6. That the Court grants such other, further, and different relief as the Court deems just and proper under the circumstances.

## ON THE THIRD CAUSE OF ACTION

1. That the Court order an accounting of all Defendants' financial records relating to the Infringing Song and the Infringing Album in order to determine the sums of money owed to plaintiff;

2. Upon a determination of sums due to Plaintiffs, demand is made that those sums be paid to Plaintiffs;

3. Interest at the maximum legal rate from the date said sums were due;

4. All reasonable attorney's fees and costs incurred herein; and

5. Any other relief deemed by the Court to be just and reasonable.

### ON THE FOURTH CAUSE OF ACTION

1. That the Court imposes an actual or constructive trust upon Defendants in favor of Plaintiff with respect to all income received by them from exploitation of the Infringing Song and the Infringing Album;

2. An award of restitution in an amount greater than or equal to Defendants' unjust enrichment, the value of which is to be determined by proof at trial;

3. Interest at the maximum legal rate from the date of public distribution of the Infringing Song;

4. All reasonable attorney's fees and costs incurred herein; and

5. Any other relief deemed by the Court to be just and reasonable.

### ON THE FIFTH CAUSE OF ACTION

1. For a permanent injunction prohibiting Defendants, and those acting in concert with them, from engaging in further acts of infringement by making, promoting, distributing, administering, performing, selling or otherwise exploiting;

the Infringing Song and the Infringing Album in their current state.

2. Further that Defendants be ordered to account for and recall from distribution channels any and all copies of the Infringing Song and the Infringing Album so as to permanently remove then from the stream of commerce;

3. All reasonable attorney's fees and costs incurred herein; and

4. That the Court grants such other, further, and different relief as the Court deems just and proper under the circumstances.

### SIXTH CAUSE OF ACTION

1. That all agreements executed between Plaintiff and Defendants based on Defendants' multiple intentional material false representations be voided;

2. That all agreements executed by Defendants on Plaintiff's behalf based on Defendants' multiple intentional misrepresentations be voided and Plaintiff be restored to full right and title to the track and be

1  recognize throughout the universe as the sole holder of all right, title and interest to the tracks Plaintiff

2  created;

3  3. All reasonable attorney's fees and costs incurred herein; and

4  4. That the Court grants such other, further, and different relief as the Court deems just and proper under

5  the circumstances.

6                          <u>DEMAND FOR JURY TRIAL</u>

7                  Plaintiff Brandon Parrott & Erica Tucker hereby demand

8                      a jury trial on all issues triable of right by jury.

9

10

11

12          Respectfully Submitted this 9th day of June 2016.

13

14  Brandon Anthony Parrot
    Plaintiff
15  Pro Se

16

17  Erica Tucker
    Plaintiff
18  Pro Se

19

20

21

22

23

24

25

26

27

28

**Exhibit List**

1.Original Copyright registration of Brandon Parrott for the underlying composition and sound recordings including BAMBA –**Exhibit A**

2. Co Producer Agreement between Mr Porter Productions INC. and Brandon Parrott-**Exhibit B**

3.Settlement and Mutual Release agreement between Denaun Porter and Brandon Parrott-**Exhibit C**

4.Mechanical license for ISRC #10032556 –**Exhibit D**

5.List of Mechanical Licenses requested to be produced from UMG by Erica Tucker-**Exhibit E**

6.Licenses and redacted agreements  sent by UMG to justify rates paid on PIMP to Parrott-**Exhibit F**

7.Email from Ping Hu listing licenses that could not be located by UMG-**Exhibit G**

8.Certificate of Non Existence from the State of Michigan for MR PORTER PRODUCTIONS INC.-**Exhibit H I**

9.Letters from plaintiffs  to Defendant D. Porter, Z. Katz, and UMG –**Exhibit J**

Complex Article –Exhibit H

*Exhibit A*

5/16/16, 12:13 PM

```
<html><head></head><body><pre style="word-wrap: break-word; white-space: pre-
wrap;">Type of Work:      Music

Registration Number / Date:
                   SRu000496482 / 2002-12-23

Title:             Birdman collection.

Description:       4 compact discs.

Copyright Claimant:
                   Â© on words &amp; music; Brandon A. Parrott, 1978-

Date of Creation:  2001

Names:             Parrott, Brandon A., 1978-

==============================================================================


</pre></body></html>
```

19

*Exhibit B*

## CO-PRODUCER AGREEMENT

This agreement, of March 6th, 2003 shall confirm that Brandon Parrott (hereinafter referred to as "Producer") has agreed to provide his producer services for Mr. Porter Productions, Inc. (hereinafter "Company"). With regard to such services, Company and Producer hereby agree as follows:

1. ENGAGEMENT: Producer shall at the direction of Company co-producer along with Denaun Porter (1) master recording entitled "P.I.M.P" featuring the performance of Curtis Jackson p/k/a 50 Cent (hereinafter the "Master"). The terms "Master", "Recording Costs" and all other terms not defined herein shall have the same meaning ascribed to such terms as in Company's producer agreement with Aftermath Records ("Record Company") dated as of September 1st, 2002 as heretofore or hereafter amended, modified, extended or supplemented (the "Producer Agreement"). Relevant portions of the Producer Agreement are attached hereto as Exhibit A.

2. TERM: The term of this Agreement shall commence upon the date hereof and shall continue until Producer has performed all of Producer's services hereunder. Company hereby acknowledges satisfactory performance of Producer's services; provided that such acknowledgment shall not constitute a waiver of any of Company's rights or remedies against Producer regarding Producer's obligations, warranties and representation herein.

3. GRANT OF RIGHTS: Company and Company's designees, shall be the sole, exclusive, perpetual, owner throughout the world of all the results and proceeds of all of Producer's services, all of such services being "works made for hire" under this Agreement, including the produced Master from inception (but specifically excluding the underlying composition embodied therein), which ownership entitles Company among other things to the following exclusive, perpetual worldwide right, including, but not limited to:

   The right to, reproduce, distribute, sell, advertise and market the Master, or any re-mixes thereof, and to permit others to do the same, alone or coupled with other masters, in any audio or audio-visual format now known or hereafter devised, in any markets; The right to publicly perform or permit the public performance of the Master by any present or future means and to synchronize the Masters with any medium now known or hereafter devised; The right to use and allow others to use the name, trademark, pre-approved "logo" and pre-approved likeness of the Producer for the purpose of manufacturing, distributing, advertising and promoting the Master; The right to license others to exercise any and all rights possessed by Company under this Agreement.

4. ADVANCE/ROYALTIES:

   (a)   Company shall pay Producer an advance, recoupable against all royalties payable to Producer hereunder, of Five Thousand Dollars ($5,000). Said advance shall be paid to Producer within thirty days of the date of this Agreement.

*EXHIBIT B*

3

reasonable attorney's fees) and damages arising from the breach by the Producer of the warranties made by Producer herein.

8. RESTRICTIONS: Producer shall refrain, for a period of five (5) years following release of the Master, from producing a phonograph record embodying any selection embodied in the Master.

9. NOTICE: All notices to the Company shall be delivered to me at the following address:

> Mr. Porter Productions, Inc
> c/o Zach Katz
> 8665 Wilshire Blvd. Suite #208
> Beverly Hills, CA. 90211

All notices to Producer shall be delivered to you at the following address:

> _____
> _____
> _____

10. MISCELLANEOUS: This Agreement shall be governed by the law of the state of Michigan and the Michigan courts (state and federal) only, will have jurisdiction of any controversies regarding this Agreement, any action or other proceeding which involves such a controversy will be brought in these courts in California and no where else. This Agreement contains the entire understanding of the parties hereto relating to the subject matter hereof, and all negotiations and understandings are merged herein. This Agreement cannot be modified except by an instrument in writing, executed by both an Officer of the Company and Producer. A waiver of by either party of a term or condition of this Agreement or of a breach by either party in any instance shall not constitute a waiver of any subsequent term, condition or breach, whether or not similar. All remedies, rights undertaking, obligations and agreements contained in this Agreement shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either party. Producer's rights and remedies in the event of a breach or alleged breach of the provisions of this Agreement will be limited to Producer's rights, if any, to recover damages, if any, in an action at law and in no event shall Producer be entitled by reason of such breach or alleged breach to enjoin, restrain or seek to enjoin or restrain the distribution or other exploitation of the Master. This Agreement shall be deemed drafted by the counsel for both parties and any rule that an agreement is interpreted against the drafting party shall not apply.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

_____        For an on behalf of :
Denaun Porter                 Mr. Porter Production, Inc.

_____
Date

_____
Brandon Parrott

_____
Date

21

Exhibit C

TBA

Settlement Agreement

22

COPYRIGHT LICENSE AGREEMENT ON BEHALF OF:   UMG Recordings, Inc.
c/o Universal Music Group
100 Universal City Plaza, 1320W-4
Universal City, CA  91608
Telephone: 818-777-4040
Fax: 818-866-1604

Page1

PDL
UMG

With respect to the release of

*Exhibit D*

| | |
|---|---|
| **Artist:** | 50 Cent |
| **UPC:** | 00075021013100 |
| **ISRC Number:** | **See Schedule A** |
| **Release Date:** | N/A |

AGREEMENT made and entered into between

**PUBLISHER:**
FBC Publishing
Attn: Brandon Parrott
13111 Ohio St.
Detroit, MI 48238

**PERCENTAGE CONTROLLED:**
See Schedule A

(hereinafter called the "Licensor") and Universal Recordings, Inc. (hereinafter called the "Licensee").

1.     Licensor warrants and represents that it owns and/or controls a valid United States copyright in the following musical composition:

| | |
|---|---|
| Title: | See Schedule A |
| Writer(s): | See Schedule A |
| Timing: | See Schedule A |

(hereinafter called the "Composition"), and has the right, free from any claim by any other party, to grant the license herein provided.

2.     Licensor grants to Licensee, its distributors and affiliated companies, the non-exclusive right, privilege and license, irrevocably during the terms of the copyright and all renewals and extensions thereof, to use the words, and/or music of the Composition, to make and/or use arrangements thereof, and to use the title thereof, to make Permanent Downloads of the Composition, through the end user, including making server and related reproductions of the Composition.

3.     A "Permanent Download" means a digital transmission of a download of a sound recording of a single musical work to a local storage device (e.g., the hard drive of the user's computer or a portable device), using technology designed to cause the downloaded file to be available for listening that is not time limited or other use limited.

4.     Licensee shall pay copyright royalties to Licensor at the following rate in the territory during the term of said copyright and all renewals and extensions thereof:

Base Royalty Rate for Share Listed Above when used on so-called Permanent Downloads: statutory

23

*Exhibit D page 2*

5.   Licensee shall render to Licensor quarterly statements and payments therefore, of all royalties payable hereunder, within 45 days after March 31, June 30, September 30 and December 31, for each quarter for which any such royalties accrue pursuant to the terms hereof.  Licensee shall provide information comparable to that presently provided for physical products, and specifically including the number of Permanent Downloads made during such quarter.

6.   Licensor warrants and represents that the Composition and any use thereof by Licensee or its grantees, licensees or assigns shall not violate or infringe upon the rights of any third party.

7.   Licensor indemnifies, and shall hold harmless, Licensee, its successors and assigns from all loss, damage or expense (including legal expenses and attorney's fees) (a) arising out of or connected with any claim by a third party which is inconsistent with any of Licensor's warranties herein, or (b) by reason of any adjudication invalidating the copyright in the Composition and/or any of the rights granted by Licensor herein.

8.   This agreement is assignable by either party, and shall be binding upon the heirs, legal representatives, successors and assigns of the parties hereto.  Such an assignment shall not relieve Licensor of its obligations pursuant to paragraph 6 above.  The execution of the agreement by Licensee shall constitute and is accepted by Licensor as full compliance with all obligations of Licensee to Licensor, statutory and otherwise, arising from or connected with Licensee's use of the Composition as provided herein.

LICENSOR: **FBC Publishing**

By: _32 - 0082648_

Federal Tax I.D. Number <u>or</u>
Social Security Number:

~~LICENSEE: UMG Recordings, Inc.~~

By: _Brandon Paris_

LICENSEE: UMG Recordings, Inc.

By: _____

- 2 -

Exhibit D
Page 3

Request Date:
01/30/04



UNIVERSAL

SCHEDULE 'A'

| ISRC | Play Date | Album Num | Artist Name | Track Title | Song Writer | Publisher Name | Shr | BPI Royalty Rec Term Dist | UPC | UMG |
|---|---|---|---|---|---|---|---|---|---|---|
| USIR10312556 | 2 | 49 | 50 Cent | P.I.M.P. | Curtis Jackson, Denaun Porter, Brandon Parrott | FBC Publishing | 32.50% | Statutory | 00076024013100 | UMG |

25

From: **DIRTYBIRD** ibcpublishing@yahoo.com
Subject: Re: my contact info
Date: May 21, 2014 at 5:15 PM
To: ping.hu@umusic.com





Hi Ping,

I was able to locate a Mechanical License Permanent Download License for the ISRC: USIR10312556 I will scan and send via email. The schedule A identifies the above ISRC. However I am unable to find a license for the below digital track sales ISRC codes:

USIR10300020
USIR10300021
USIR10311993
USIR10311994
USIR10311995
USIV20300462


Also please provide a copy of the Mechanical Licenses for the following "Get Rich or Die Tryin" UPC/EAN #'s which I am also unable to locate a mechanical license for:

0602517205710
0606949353902
0606949354411
0606949354428
0606949354442
0606949354527
0606949356422
0606949366124

Please let me know ASAP.


Best,


rica Tucker
eneral Manager
BC Publishing
04)436-5099



Exhibit F

TBA
Redacted Agreements
+
Licenses

27

Pg 1

From: **ping.hu@umusic.com**
Subject: FBC Publishing licenses
Date: May 29, 2014 at 2:43 PM
To: DIRTYBIRD fbcpublishing@yahoo.com
Cc: Steve Weil Steve.Weil@umusic.com, Tegan Kossowicz Tegan.Kossowicz@umusic.com



Hi Erica, here is what we have.

Exhibit G

Ping Hu
Vice President Royalty Audits



UNIVERSAL MUSIC GROUP
1750 N. Vine St.
Hollywood, CA 90028
office (323) 871-5563
fax    (323) 871-5121
ping.hu@umusic.com


**From:** Brandon Parrott [mailto:fbcpublishing@yahoo.com]
**Sent:** Wednesday, May 21, 2014 5:16 PM
**To:** Hu, Ping
**Subject:** Re: my contact info


Hi Ping,

I was able to locate a Mechanical License Permanent Download License for the ISRC: USIR10312556 I will scan and send via email. The schedule A identifies the above ISRC. However I am unable to find a license for the below digital track sales ISRC codes:


USIR10300020 – license attached (first attachment)
USIR10300021 – license attached (second attachment)
USIR10311993 – no license could be located
USIR10311994 – no license could be located
USIR10311995 – no license could be located
USIV20300462 – this was cleared by our legal department thru the artist agreement, no license needed


Also please provide a copy of the Mechanical Licenses for the following "Get Rich or Die

28

Tryin" UPC/EAN #'s which I am also unable to locate a mechanical license for:

*Exhibit G* (handwritten)

0602517205710 – no license could be located
0606949353902 – license attached (first attachment)
0606949354411 – license attached (first attachment)
0606949354428 – license attached (first attachment)
0606949354442 – license attached (first attachment)
0606949354527 – license attached (second attachment)
0606949356422 – UK Version
0606949366124 – UK Version

Please let me know ASAP.

Best,

Erica Tucker
General Manager
FBC Publishing
(404)436-5099

MULTIPLATINUM COMPOSER DIRTYBIRD
On Wednesday, May 21, 2014 2:07 PM, "Hu, Ping" <ping.hu@umusic.com> wrote:

Here is my new contact info.

Ping Hu
Vice President Royalty Audits



UNIVERSAL MUSIC GROUP
1750 N. Vine St.
Hollywood, CA 90028
office (323) 871-5563
fax    (323) 871-5121

ping.hu@umusic.com

29

Exhibit H

Complex Article

30



# UNITED STATES OF AMERICA
# The State of Michigan



## Department of Licensing and Regulatory Affairs

### Lansing, Michigan

This is to Certify That

a diligent search has been made of the records of this office and no record has been found of a corporation, limited partnership, or limited liability company by the name of

### MR PORTER PRODUCTIONS INC

I FURTHER CERTIFY that no record has been found that the name is reserved or registered, or that it has been assumed by a corporation, limited partnership, or limited liability company.

This certificate is in due form, made by me as the proper officer, and is entitled to have full faith and credit given it in every court and office within the United States.



In testimony whereof, I have hereunto set my hand, in the City of Lansing, this 25th day of April, 2016.

*Julia Dale*

Julia Dale, Acting Director
Corporations, Securities & Commercial Licensing Bureau

Sent by facsimile transmission

31

*Exhibit J*

## FBC Productions

6818 W. Sunset Boulevard Suite 3
Los Angeles CA 90069
(818)299-7498
Fbcpublishing@yahoo.com

May 1, 2016

Universal Music Group
Attention: Ping Hu, Steve Weil and Business & Legal Affairs
2200 Colorado Ave.
Santa Monica

## FINAL DEMAND AND NOTICE TO CEASE AND DESIST WITHOUT DELAY

Ping Hu:

This letter is in reference to Brandon Parrott and his sole ownership rights in and to the musical composition and sound recording BAMBA which is contained in the Universal/ Interscope release PIMP performed by "50 Cent". Valid US Copyright registration #SRu 000496482 is attached as Exhibit A.

Reference is made to the "Co Producer Agreement" dated March 6, 2003 between Brandon Parrott and Mr. Porter Productions INC. (Exhibit B) It has come to our attention that the principal Mr Porter Productions INC does not and has not ever legally existed in the state of Michigan or any other state. A certificate of non existence from the state of Michigan is attached as "Exhibit C". As you may know where there is no principal there can be no agent. Therefor the Co Producer agreement is Void from inception and unenforceable against Mr. Parrott.

*Pg 2*

*Exhibit J*

inception and unenforceable against Mr. Parrott.

Mr. Parrott has further discovered that Mr. Porter acted fraudulently in concealing material facts which he had a duty to disclose to Mr. Parrott. Such harm has resulted from these actions causing damage to Mr. Parrott and his livelihood.

Additionally, Interscope released the compilation "Shady XV" containing PIMP on November 26, 2016 and failed to properly credit Mr. Parrott as producer of his original work of authorship.

Consequently, the agreement is unilaterally rescinded from inception for cause of actual fraud, fraudulent concealment, misrepresentation and undue influence. Mr. Porter not be enriched by your fraud against Mr. Parrott.

**All Statements both Publisher and Producer sent to FBC Publishing/ Brandon Parrott by UMG from inception are hereby contested.**

**<u>We hereby Demand that:</u>**

1)UMG/Interscope and its subsidiaries immediately and without further delay cooperates with Mr. Parrott and his designated representatives so as to not further prejudice Mr. Parrott's rights at law and equity.

2) We further demand that UMG/Interscope immediately cease and desist any exploitation of the work without properly crediting and compensating Mr. Parrott.

3) That UMG provide a full accounting of all profits derived from any and all releases of PIMP including any and all compilations containing the master, remasters, and remixes.

*Pg 5. Exhibit J*

4) That UMG provide a time for an authorized representative of Brandon Parrott to inspect the books, ledgers, documents, and previous audits on file with UMG in reference to all versions of the master PIMP, contained in GET RICH OR DIE TRYIN, SHADY XV and all other releases and compilations containing the master.

4) That UMG engage in settlement negotiations immediately so as to not cause further harm to Mr. Parrott. If full remedy is not made by **May 30, 2016** a lawsuit will be filed in Federal District Court and UMG may be enjoined and viewed as a willing participant to Denaun Porter's Fraud.

Please call (818) 299-7498 or email fbcpublishing@yahoo.com to arrange a settlement conference immediately.

All rights hereby reserved at law and equity.

Sincerely yours,


Erica Tucker

President

FBC Productions LLC.

34

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**PLAINTIFFS** ( Check box if you are representing yourself ☒ )

Brandon Parrott & Ezra Tucker
6818 W Sunset Blvd #3
Los Angeles CA 90028

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Duncan Porter et. Al        Oakland, MI

County of Residence of First Listed Plaintiff    Los Angeles

*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant

*(IN U.S. PLAINTIFF CASES ONLY)*

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Fraud & 17 USC 101 et seq. Unjust Enrichment Demand for accounting Constructive Trust Permanent Injunction

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☒ 820 Copyrights |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | **TORTS** | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | **PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☒ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 151 Medicare Act | ☐ 310 Airplane | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 460 Deportation | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 480 Consumer Credit | ☐ 160 Stockholders' Suits | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 490 Cable/Sat TV | ☐ 190 Other Contract | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 850 Securities/Commodities/Exchange | ☐ 195 Contract Product Liability | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 891 Agricultural Acts | **REAL PROPERTY** | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 360 Other Personal Injury | ☐ 441 Voting | **LABOR** | |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 362 Personal Injury-Med Malpratice | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | ☐ 230 Rent Lease & Ejectment | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

CV16-4287

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | | Western |
| QUESTION A: Was this case removed from state court? | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Southern |
| ☐ Yes ☒ No | ☐ Orange | Eastern |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Riverside or San Bernardino | |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| **QUESTION D: Location of plaintiffs and defendants?** | | | |
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| D.1. Is there at least one answer in Column A?<br>☐ Yes ☒ No<br>If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. | D.2. Is there at least one answer in Column B?<br>☐ Yes ☒ No<br>If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. |
|---|---|

| | INITIAL DIVISION IN CACD |
|---|---|
| **QUESTION E: Initial Division?**<br>Enter the initial division determined by Question A, B, C, or D above: ➡ | *Western Division* |

**QUESTION F: Northern Counties?**

Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties?   ☐ Yes ☒ No

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

☒ NO     ☐ YES

**a). IDENTICAL CASES**: Has this action been previously filed **in this court**?

If yes, list case number(s): _____

**b). RELATED CASES**: Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

☒ NO     ☐ YES

If yes, list case number(s): _____

Civil cases are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

A civil forfeiture case and a criminal case are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____     DATE: 6/16/16

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

*Erica J. Yocker*     6/14/16

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

CIVIL COVER SHEET